IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**EUGENE D. BRUCE**,                          Case No. 3:10 CV 1954

     Plaintiff,                          Judge Jack Zouhary

      v.                          REPORT AND RECOMMENDATION

**COMMISSIONER OF**
     **SOCIAL SECURITY**,

     Defendant.                          Magistrate Judge James R. Knepp II

### Introduction

Plaintiff Eugene Bruce appeals the administrative denial of disability insurance benefits (DIB). The district court has jurisdiction under 42 U.S.C. § 405(g). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). For the reasons discussed below, the undersigned recommends the Commissioner's decision be reversed and remanded.

### Procedural Background

Plaintiff applied for DIB on October 29, 2007, alleging a disability onset date of June 9, 2006 based on bladder cancer, urostomy appliance, arthritis, kidney infections, urinary tract infections, and sore legs and back. (Tr. 85-92, 120). His date last insured was March 31, 2009. (Tr. 100). The state agency denied Plaintiff's application initially and on reconsideration. (Tr. 42, 52) Plaintiff requested a hearing. (Tr. 59). On September 22, 2009, an ALJ conducted a hearing in Lima, Ohio. (Tr. 4-20). Plaintiff appeared with counsel and testified. (*Id.*). A vocational expert (VE), Barry Brown, also testified. (*Id.*).

On December 16, 2009, the ALJ issued a written decision denying Plaintiff's claim. (Tr. 27-

37). The ALJ found that Plaintiff was not entitled to benefits because he could perform the full range of light work from the alleged onset date through the date last insured. (Tr. 31). The Appeals Council denied review on February 26, 2010, (Tr. 1-3), rendering the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On September 2, 2010, Plaintiff filed the instant case. (Doc. 1).

## Factual Background

*Medical Evidence*

Plaintiff was diagnosed with high-grade, superficially invasive bladder cancer in 2004. (Tr. 224). In June 2006, he underwent a radical cystoproctatectomy with ileal conduit diversion. (Tr. 224, 257-62). This procedure surgically removed Plaintiff's bladder and diverted urine to a Hollister stoma bag or urostomy[1] appliance. (Tr. 224). Since then, Plaintiff has had no cancer recurrence. (Tr. 212, 415, 416, 224, 382).

In January 2007, Plaintiff reported back pain that is sometimes sharp, worse in the morning, and worse when he carries a load. (Tr. 241). The doctor noted: "Now that he's started working, has developed pain in lower back, sometimes sharp" and that Plaintiff "[i]s a construction worker with laying ceramic tile." The doctor also noted some tenderness and a mildly positive straight leg raise with pain, but no sciatic symptoms. The doctor diagnosed low back pain with lumbar somatic dysfunction. He gave Plaintiff medication and instructed him on range of motion exercises. (*Id.*). A week later, Plaintiff reported he was 70-75% improved. (*Id.*).

In June, Plaintiff reported chronic back pain. The doctor reported a mildly positive straight

---

[1] In a urostomy, "[t]he surgeon attaches the ureters – the tubes that carry urine to the bladder – to either the small intestine or to the abdominal wall." MedlinePlus, U.S. Nat'l Library of Medicine, Nat'l Institutes of Health, *available at* http://www.nlm.nih.gov/medlineplus/ostomy.html.

leg raising exam with his right leg, and "some tenderness across the lower lumbar spine from L4-S1 that is fairly diffuse." (Tr. 240).

In October, Plaintiff reported severe pain in his back near his kidney area to Dr. Neil Holleran, his family physician. (Tr. 249, 378). At that time, Dr. Holleran also wrote Plaintiff a prescription to not wear his seat belt because "[t]he pressure of the seat belt causes his bag to break" and explained "[d]ue to the cost and embarrassment I recommend he not wear a seat belt." (Tr. 407). Later that month, Plaintiff reported he had lower back pain after a lot of driving over the weekend. (Tr. 248).

In November, Dr. N.K. Bansal of Lima Urology noted Plaintiff reported significant back pain "with some radiation of the pain to his lower extremities" and feeling "weak". (Tr. 224). Dr. Bansal noted Plaintiff was managing his urostomy appliance without difficulty. (*Id.*). Dr. Bansal ordered an MRI to evaluate Plaintiff's back pain. That same month, Plaintiff reported lower back pain with chills and aches to Dr. Holleran. (Tr. 248). Plaintiff's lumbar MRI was normal. (Tr. 225).

In January 2008, Dr. Holleran noted Plaintiff complained of mild pain across his low back. Plaintiff was concerned it might be the start of a urinary tract infection.  (Tr. 401). Dr. Holleran noted Plaintiff "has been doing a great deal of lifting, [and he] feels [he] may have pulled muscles." (*Id.*).

In February, Dr. Gary Hinzman, a state agency physician, reviewed Plaintiff's medical records and assessed Plaintiff's physical functional capacity. (Tr. 369-76). Dr. Hinzman concluded Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds. (Tr. 370). He stated Plaintiff could stand, walk, or sit about six hours in an eight-hour workday and that Plaintiff's ability to push or pull was unlimited. (*Id.*). Dr. Hinzman found no postural, manipulative, or environmental

3

limitations. (Tr. 371-73).  Dr. Hinzman stated Plaintiff's statements were partially consistent with the medical evidence of record. (Tr. 374).

In 2008, Plaintiff told Dr. Holleran his "legs aches and hurt all the way down to his toes" and that he has some numbness and tiredness. (Tr. 389, 400). He also reported his back hurt. (*Id.*).

Also in May, Dr. Holleran reported that since June 2006, Plaintiff has markedly decreased ability to work because he fatigues easily. (Tr. 382). He also reported Plaintiff has leg fatigue and numbness, and limited mobility secondary to his bag placement. He also noted Plaintiff has difficulty sleeping, pain in his stomach, and complaints at each visit of lower quadrant pain. (*Id.*). Dr. Holleran opined that Plaintiff can't even bend over to tie his shoes because of back pain and that Plaintiff is "markedly depressed" due to his inability to do anything. (Tr. 383). Dr. Holleran noted Plaintiff was on no medications, but that he usually gets a urinary tract infection every couple of months requiring antibiotics. (*Id.*). Finally, Dr. Holleran noted a concern about Plaintiff's bag breaking on his abdomen. (*Id.*).

In June, Plaintiff told Dr. Holleran he was having a lot of back pain and feeling urinary retention. (Tr. 399, 406). He also reported passing mucous in his appliance. (*Id.*).

In August, state agency physician Dr. Myung Cho reviewed Plaintiff's updated medical records and affirmed Dr. Hinzman's February assessment. (Tr. 396).

In February 2009, Dr. Holleran noted Plaintiff reported retaining a lot of fluid and that his stoma bag is always full. (Tr. 405).  He also reported he "[f]eels a hernia over the old incisional area." (*Id.*).  In March, Dr. Bansal noted a ventral hernia at the upper and lower end of the abdominal incision. (Tr. 420). Plaintiff reported "some discomfort when he lifts." (*Id.*). Dr. Bansal noted Plaintiff "is having some difficulty managing the stoma bag." (*Id.*).  Later in March, Dr. Bansal

noted Plaintiff was complaining of pain due to his hernia and Dr. Bansal "advised him again that he can discuss this with Dr. Holleran for appropriate general surgery referral." (Tr. 415).

In February, Dr. Holleran completed a physical capacity form. (Tr. 409-10). He stated Plaintiff could stand less than two hours, walk less than one-half hour, and sit less than one hour in an eight-hour workday. (Tr. 409). Dr. Holleran said Plaintiff could lift or carry up to twenty pounds. (*Id.*). Dr. Holleran opined that Plaintiff could use his hands for simple grasping and fine manipulation, but not pushing and pulling or handling. (Tr. 410). He said Plaintiff could not use foot controls because his feet get numb.  Plaintiff could frequently climb stairs, occasionally bend, kneel or crawl, never squat or climb ladders, and could reach above shoulder level. (*Id.*). In the "remarks" section of the form, Dr. Holleran noted: 1) Plaintiff "wears bag for kidney"; 2) "[c]an't wear constrictive clothing"; and 3) "medium pain thru back throughout day." (*Id.*).

In June, Plaintiff complained to Dr. Holleran of constant kidney pain for four days. (Tr. 431). In July, Dr. Holleran noted Plaintiff reported back pain that became severe one hour prior. (*Id.*).

*Plaintiff's Statements and Testimony*

In a January 2008 function report, Plaintiff described daily activities of meals, "household domestics", watching TV, napping, and "limited maintenance and lawn care." (Tr. 148).  He noted that he is "most active in the morning, due to depression and discomforts." (Tr. 148).  He reported he couldn't wear confining clothing such as tucked-in shirts or belts.  (Tr. 149). He reported he does limited cleaning, repairs, yard work, and laundry, and was capable of preparing his own meals. (Tr. 149-50).  He reported shopping "dailey [sic] if needed" for "anything [he] need[s]."  (Tr. 150).

In March, Plaintiff's wife filled out a function report. (Tr. 167-74). Mrs. Bruce described Plaintiff's typical day as he has coffee, eats, bathes, rests, does some household chores, has lunch,

takes a nap, reads, watches television, eats dinner, and does "limited chores and some shopping." (Tr. 167). Mrs. Bruce also reported Plaintiff has difficulty with his urostomy applicance. (Tr. 168). She said Plaintiff washes dishes, does laundry, and mows the lawn. (Tr. 169). She reported Plaintiff travels by walking and driving. (Tr. 170). Mrs. Bruce stated Plaintiff goes shopping two times per week. (Tr. 171).  Mrs. Bruce said Plaintiff used to be very social and physically active and since his bladder cancer, has become much more introverted and is tired frequently. (Tr. 174).

After his diagnosis in 2004 and before his surgery in 2006, Plaintiff had a radiation treatment for his cancer. (Tr. 14). Plaintiff also testified that between 2004 and 2006 he was able to "usually [work] a four day week because the treatments would be . . . arranged for a Friday." (Tr. 15).

At the administrative hearing, Plaintiff testified about his previous employment.  He testified that after his June 2006 operation, he worked from April or May 2007 "[t]hrough August with full-time status, and part of the time in September." (Tr. 10).  When asked if he normally worked an eight-hour day, he replied, "[i]t was more like a ten hour day", six hours of which he spent driving, and the rest doing light construction work. (Tr. 12-13).  Plaintiff testified he stopped working because he was experiencing recurrent kidney infections and it was hard on his urostomy appliance. (Tr. 13). He first reported doing "[a]bsolutely very little" since then, but later said he tries to keep up his yard work, including mowing the lawn. (Tr. 10-11, 18). He also later testified that he gets up in the morning, walks the dog half way around the block, and has coffee with a neighbor. (Tr. 17).

With regard to his appliance, Plaintiff testified that he cannot wear restrictive clothing because it "bends the bag over and gives it less capacity to fill and causes breakage." (Tr. 15). He also testified sweat can break the seal. (*Id.*). He has to empty the bag once an hour, which takes 30 seconds. (Tr. 15-16). However, if the seal breaks, it takes about an hour to re-attach the bag and

6

make sure it is properly sealed. (Tr. 16). Plaintiff also testified that he sleeps lightly now so that he will wake up and empty the bag. (*Id.*).

Barry Brown, the VE, testified about the exertional requirements of Plaintiff's previous work. (Tr. 19-20).

## Standard of Review

Reviewing the denial of DIB, this Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (citing 42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting 42 U.S.C. § 405(g)). The court "may not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003). However, procedural errors can be a basis for overturning the decision of the Commissioner, even if that decision is supported by substantial evidence. *See Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

**Standard for Disability**

Eligibility for DIB is predicated on the existence of a disability. 42 U.S.C. § 423(a) & (d). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The Commissioner uses a five-step sequential evaluation process, found at 20 C.F.R. § 404.1520, to determine whether a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers a claimant's residual functional capacity, age, education, and past work experience to determine if a claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

8

**Discussion**

Plaintiff raises two related objections to the ALJ's decision: 1) the ALJ failed to properly evaluate restrictions imposed by Plaintiff's urostomy appliance; and 2) because Plaintiff has limitations as a result of the urostomy appliance, the ALJ improperly relied on the Medical-Vocational Guidelines. Defendant contends the ALJ's decision is supported by substantial evidence.

A claimant's residual functional capacity (RFC) is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. *Id.* § 404.1529. An ALJ must also consider and weigh medical opinions. *Id.* § 404.1527. The regulations provide the ALJ will assess a claimant's "physical abilities", "mental abilities," and "other abilities affected by impairment(s)". *Id.* § 404.1545(b)-(d).  Regarding "other abilities", the regulations provide:

> Some medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s)  which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities. If you have this type of impairment(s), we consider any resulting limitations and restrictions which may reduce your ability to do past work and other work in deciding your residual functional capacity.

*Id.* § 404.1545(d). The regulations describe a claimant may have both "exertional" and "nonexertional" limitations on his ability to work.  *Id.* § 404.1569a(a). "Limitations or restrictions which affect your ability to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing or pulling, are considered nonexertional."  *Id.* § 404.1569a(a); *see also* SSR 96-4p, 1996 WL 374187, *1 ("[E]xertional limitations affect an individual's ability to meet the strength demands of jobs, and nonexertional limitations or restrictions affect an individual's ability to meet the nonstrength demands of jobs.").

9

One example of a nonexertional limitation given by the regulations is a claimant may "have difficulty tolerating some physical feature(s) of certain work settings, e.g., [the claimant] cannot tolerate dust or fumes". 20 C.F.R. § 404.1569a(c)(1)(v). The need for frequent restroom access has been classified by other courts and ALJs as a nonexertional impairment. *See, e.g.*, *Dambrowski v. Astrue*, 590 F. Supp. 2d 579, 584 (S.D.N.Y 2008) ("[P]laintiff had an obvious nonexertional impairment that he claimed prevented him from working: his need to use the bathroom with unusual frequency.").

The ALJ here explicitly considered Plaintiff's *exertional* impairments. *See, e.g.*, Tr. 33 ("The claimant has not presented substantial evidence of medically determinable impairment[s] that would prevent him from performing the basic exertional requirements of light work.").  He appropriately considered Plaintiff's "level of functioning in the performance of daily activities, his treatment history, and the results of clinical testing." (*Id.*).  This portion of the ALJ's decision is supported by substantial evidence.  The ALJ noted state agency physicians found Plaintiff "capable of performing the exertional requirements of 'light' work". (Tr. 33, 369-76, 96). He also noted Dr. Holleran, Plaintiff's treating physician, opined Plaintiff was capable of the lifting requirements of light work. (Tr. 33, 409). Plaintiff's daily activities supported the ALJ's conclusion regarding his exertional impairments. The ALJ noted multiple places where records indicated Plaintiff had been lifting heavy objects. (Tr. 35, 11, 241 401).  Plaintiff also stated he does yard work, mows the lawn, some cleaning, and laundry. (Tr. 10-11, 17-18, 150).[2] Finally, although finding that it was not substantial

---

[2] The ALJ also states, twice in his opinion, that Plaintiff testified he can walk four to five miles. (Tr. 29, 34). The Court could find no such statement in Plaintiff's testimony, and the only citation the ALJ provides near this statement is: "Exhibit 5E, at 7." (Tr. 34). That citation references Plaintiff's January 2008 function report.  Although the handwriting is somewhat difficult to read, the Court reads it to say Plaintiff can walk "1/4 mile." (Tr. 142). However, because the ALJ's

gainful activity, the ALJ also noted Plaintiff had been able to work full time for four months during the time he claimed to be disabled. (Tr. 33, 10-13).  This provided support for the ALJ's conclusion that Plaintiff's level of functioning was greater than he claimed. These records combined provided the ALJ with substantial evidence Plaintiff could perform the exertional requirements of light work.

The ALJ also reasonably rejected the more severe exertional restrictions Dr. Holleran placed on Plaintiff and provided good reasons for doing so. The ALJ explained Dr. Holleran's opinion that Plaintiff could stand for less than two hours, walk for less than one-half hour, and sit for less than one hour in an eight-hour workday lacked supporting evidence.  He noted "[t]he results of a lumbar MRI were normal" and pointed to Plaintiff's four months of work. (Tr. 33, 225). At that job, Plaintiff testified he worked ten hour days, often driving for six hours per day. (Tr. 12-13). These were "good reasons" for discounting Dr. Holleran's more severe exertional restrictions. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (explaining that opinion of treating physician is not entitled to deference unless well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record and that an ALJ must provide "good reasons" for discounting a treating physician's opinion).

It is unclear, however, whether the ALJ considered whether Plaintiff had any *nonexertional* impairments, particularly stemming from his urostomy appliance.   The ALJ's discussion of Plaintiff's urostomy appliance consisted of a summary of Plaintiff's testimony about the difficulties he has with the appliance (Tr. 29) and three statements:

1.      "Although the claimant is able to manage the appliance, he testified that if the appliance comes off, it takes him 45 minutes to clean the area and replace

decision regarding Plaintiff's exertional impairments is otherwise supported by the record, any error in this regard is harmless.

the appliance" (Tr. 30); and

2.    "Further, as noted above, the claimant is able to handle the care of his own
appliance.  Thus, the mere fact that the claimant was treated for cancer of the
bladder and wears a urinary appliance should not necessarily lead to a
conclusion that he is rendered 'disabled' for Social Security purposes" (Tr.
32);

3.    "In fact, the claimant's statements regarding experiencing severe problems
with his urine appliance are inconsistent with the history he gave of full-time
construction work in 2007." (Tr. 35).

The ALJ did not specifically address Plaintiff's statements that he has to empty the bag on
his urostomy appliance every hour, (Tr. 15-16), that he cannot wear restrictive clothing or tool belts
due to the bag (Tr. 15), or that humid conditions and sweat can cause the appliance to break its seal
(*id.*). Rather, the ALJ simply stated Plaintiff's statements about "severe problems" with his urostomy
appliance "are inconsistent with the history he gave of full-time construction work in 2007." (Tr.
35). The undersigned concludes this is insufficient. First, the ALJ accepted Plaintiff's testimony
about his 2007 driving and construction work, but rejected, without discussion, Plaintiff's
explanation that he stopped working that job because of his condition: "A lot of it was for the fact
that I couldn't maintain my medication. I was coming down with kidney infections way too much,
and which was affecting me all the way. *It was hard on my appliance, you know, and just there in
a sweat all the time and everything else*[.]" (Tr. 13) (emphasis added). Plaintiff also testified that he
was hired with knowledge of his disability and "it was at [his] discretion as to what [he] did." (Tr.
10, 12). Second, the ALJ rejected Plaintiff's statements about "severe problems" with his urostomy
appliance, but seemingly did not consider in his RFC – or at least did not explain his consideration
of – the potential less-severe restrictions such as the need to wear non-restrictive clothing and access
to a restroom to empty the appliance.  These statements were also consistent with Dr.  Holleran's

12

notes that Plaintiff should not wear a seat belt (Tr.  407), should not wear constrictive clothing (Tr. 410), and about concerns regarding the bag breaking (Tr.  383).  Additionally, although the ALJ stated Plaintiff "is able to handle the care of his own appliance", he failed to discuss whether such care might impose any nonexertional restrictions on work.

Even a cursory review of the hearing transcript shows the ALJ is certainly correct that Plaintiff lacked credibility in many respects.  On review, the Court is to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (citation omitted). Still, an ALJ's decision to discount a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, *2.

Despite Plaintiff's lack of credibility, however, the ALJ did not explain how that lack of credibility led him to conclude (without discussion) that Plaintiff's urostomy appliance with its attached bag did not pose *any* nonexertional restrictions at all.  It is unclear whether the ALJ meant to state Plaintiff's appliance would impose *no* restrictions on his ability to work, or whether he meant to state Plaintiff's appliance would impose no restrictions so severe they would prevent Plaintiff from working at all. The ALJ is also correct that "the mere fact that [Plaintiff] was treated for cancer of the bladder and wears a urinary appliance should not necessarily lead to a conclusion that he is rendered 'disabled'" (Tr. 32). However, here the ALJ provided no discussion about what restrictions the urostomy appliance might or might not impose on Plaintiff's ability to work.

13

The ALJ found Plaintiff capable of a *full range* of light work.  Light work

involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b). An ALJ may only rely on the Social Security Medical-Vocational Guidelines (the "grids"), 20 C.F.R. Part 404, Subpt. P, App'x 2, to find a claimant not-disabled if a claimant has no nonexertional impairments that preclude the performance of a full range of work at a given level. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008). If a claimant has nonexertional impairments that preclude the full range of work, an ALJ must rely on other evidence to determine whether a significant number of jobs exist in the national economy that a claimant can perform. *Id.* Other courts have noted, in an analogous situation, that the need to maintain an ileostomy or colostomy bag "constitutes a characteristic that differs from those set forth in the Guidelines." *Mackinaw v. Bowen*, 866 F.2d 1023, 1024 (8th Cir. 1989). Because it is unclear here whether the ALJ considered any nonexertional restrictions Plaintiff's urostomy appliance might impose, the Court cannot determine at this time whether the ALJ erred in relying on the grids.

Although it seems possible (and even likely) that Plaintiff is capable of performing some work, because the ALJ failed to discuss Plaintiff's potential nonexertional impairments, remand is required. On remand, the ALJ should explicitly consider: 1) whether Plaintiff's urostomy appliance imposes any restrictions; and 2) if so, whether there are still jobs Plaintiff can perform. If the ALJ concludes the urostomy appliance imposes any restrictions that limit the full range of light work, testimony from a VE will likely be necessary.

14

**Conclusion and Recommendation**

Following review of the arguments presented, the record, and applicable law, this Court finds the Commissioner's decision denying a period of disability not supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be reversed and remanded under sentence four of 42 U.S.C. § 405(g).

s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).